## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IVELISSE CALDERÓN-ALIBRÁN** | |
| **Plaintiff** | **Civil No. 2021-1149 ADC** |
| **vs.** | **Jury Trial demanded** |
| **COMMONWEALTH OF PUERTO RICO** | |
| **Defendant** | |

## AMENDED COMPLAINT[1]

**TO THE HONORABLE COURT:**

NOW COMES THE PLAINTIFF, through undersigned counsel and respectfully alleges and pleads as follows:

## I. Introduction

1.1 Plaintiff Ivelisse Calderón-Alibrán ("Ms. Calderón"), a public employee with more thirty (30) years of service in Puerto Rico, presents this case alleging unconscionable racial discrimination and a hostile environment created by the then "District Prosecutor" Jorge Carrión-Ramos ("Prosecutor Carrión" or "Mr. Carrión") and his allies, as well as complete complacency and inaction on the part of the Commonwealth of Puerto Rico.

---

[1]This Amended Complaint is permitted as a matter of course under Rule 15(a)(1)(B), since it is being presented within 21 days of defendant's July 6th Answer and 12(b) motion to dismiss. *Dockets Nos. 9 and 10.*

Defendant's Motion to Dismiss (MTD) pointed out deficiencies and errors in the Complaint, which are corrected herein. The Amended Complaint eliminates one cause of action and modifies the prayer for relief.  It is respectfully noted that the Commonwealth is required to Answer this Amended Complaint. Should it still understand that a Rule 12(b) motion is appropriate, it must be with respect to this Amended Complaint.

1.2  For decades, Ms. Calderón worked as the Secretary to the District Prosecutor for the San Juan Judicial District.  As such, she functioned as a personal secretary to and key employee for no fewer than nine (9) District Prosecutor, all of whom were satisfied with her work, which included *inter alia* the scheduling of appointments and commitments for the District Prosecutor, the reception for visitors to the Office, and the filing system about which she had a mastery like none other.

1.3  All this came to a halt in 2019, when Mr. Carrión assumed the reins of the Office and insisted that Ms. Calderón be transferred to another office, where she would not be visible to the public and where she would not work directly with him.

1.4  Ms. Calderón, the only visibly Black employee to work directly with the District Prosecutor, alleges that the disapproval and rebukes she received from Mr. Carrión stemmed from his racial prejudice and his not wanting her to be directly within his own sight and that of the visitors to the Office.

1.5  Ms. Calderón brought her concerns to the attention of upper management of the Commonwealth Department of Justice, but no actions were taken to remedy the situation she was forced to endure.

1.6  She later found out that her complaint against the District Prosecutor was dismissed by the Department of Justice of the Commonwealth, without her witnesses even being interviewed.

1.7  Although, on information and belief, it is alleged that the Department of Justice was aware of other complaints against Mr. Carrión, it did not seriously investigate Ms. Calderón's complaint, while moving forward with a complaint which Prosecutor Carrión presented against her as part of his effort to prevent her from

complaining about his conduct and to remove her from his supervision or from a leading role in the Office.

1.8 Although Mr. Carrión was eventually moved to another office, the hostile environment he left in his wake continued, as key employees loyal to him remained in the office and furthered the harassment.

1.9 As a result of ongoing affronts to her dignity and the discrimination she suffered on the basis of her race, Ms. Calderón suffered and continues to suffer substantial damages for which compensation is claimed in this action.

## JURISDICTION

2.1 Federal Question jurisdiction is invoked in this action pursuant to 28 USC section 1331, since the cause of action arises under federal law.

2.2 This is the proper venue for this action, since all parties reside in Puerto Rico or are instrumentalities of Puerto Rico, and the cause of action arose under this jurisdiction.

## PARTIES

3.1 The plaintiff Ivelisse Calderón-Alibrán is a 52 year old resident of Trujillo Alto, Puerto Rico, who has been working in the Commonwealth of Puerto Rico Department of Justice since 1989.

3.2 Defendant Commonwealth of Puerto Rico is the English-language designation for the Government of Puerto Rico.  It is subject to suit under Title VII of

the 1964 Civil Rights Act, 42 U.S.C. section 2000e et seq., and 42 U.S.C section 1981, insofar as Congress abrogated Puerto Rico's Eleventh Amendment immunity (if it existed) with respect to these claims.

## **FACTS**

4.1 Ivelisse Calderón-Alibrán has been working in the Career-Service of the Puerto Rico Justice Department ("DOJ-PR") since September of 1989.

4.2 Over the years, she received excellent job reviews, and was eventually named "Administrator of the Legal Office System."

4.3 In that role, Ms. Calderón functioned as the "right hand" and direct secretary of the Judicial District's District Prosecutor (or lead prosecutor), with responsibility *inter alia* for the following tasks: supervising other personnel assigned to this work area, maintaining the filing system of the Office, and receiving visitors to the Office and properly directing their inquiries.

4.4 Plaintiff had responsibility *inter alia* for establishing office systems, analyzing necessities and establishing procedures, coordinating appointments, meetings and other activities of the District Prosecutor and others, reviewing and properly channeling correspondence, keeping attendance records for office staff, taking minutes and drafting communications for the signature of her supervisor.

4.5 Her office was located within earshot and eyeshot of the District Prosecutor, and she would have frequent communications with him/her.

4.6 It was a prestigious position, with significant responsibilities and considerable opportunities to interact with different components of the Justice System in Puerto Rico.

4.7 In her years in the office, Ms. Calderón worked productively and successfully for a number of District Prosecutors (Lead Prosecutors for the San Juan Judicial District), including but not limited to the following: Manuel Rodríguez-Córdova; José Capó-Rivera; Juan Corchado-Juarbe; Sonia O. Martínez de Andino; Melisa Vázquez-Sandoval; Emilio Aril-García, Carmen I. Ortiz-Rodríguez; Mabel Ruiz-Soto; and Alma Méndez Ríos.

4.8 In the early months of 2019, the rumor mill was rife with talk that Prosecutor Carrión would be named as the District Prosecutor of the San Juan Judicial Region.

4.9 Mr. Carrión was eventually named to the position, albeit on an interim basis, on or about April 15, 2019.

4.10 In that role, Prosecutor Carrión was the highest-level prosecutor for the San Juan Judicial Region, supervising over 50 employees, including prosecutors and support staff.

4.11 Pursuant to 3 LPRA §295, the statutory responsibilities which Mr. Carrión would have as District Prosecutor included the following:

(a) Supervise all staff in the Prosecutor's Office in San Juan ("the Office");

(b) Assign cases and investigations to the prosecutors under his supervision;

(c) Assure the internal matters of the Prosecutor's Office be conducted in an efficient manner;

(d) Recommend to the Head of the Prosecutors (at the island level) and the Attorney General (Secretario de Justicia) all changes which he deemed necessary or appropriate with respect to the staff assigned to the Office, and also request additional personnel or resources necessary for the ideal functioning of the Office.

(e) Perform the ordinary duties and functions as a prosecutor, as well as any other task or assignment with which the Head Prosecutor at the island level charges him.

4.12 Even before Mr. Carrión began working as District Prosecutor, Ms. Calderón learned that he did not want her to continue as the  Administrator of Legal Office Systems, a position which requires working as the Secretary to the District Prosecutor, as well as close collaboration between the two public servants.

4.13 Ms. Calderón also heard that Mr. Carrión did not want one of the other Afro-Puerto Ricans in the office, María Vélez, in the office.

4.14 Before Mr. Carrión arrived at the office, Ms. Calderón was already receiving inquiries from her co-workers, asking her to where she was going to be transferred upon Mr. Carrión's insistence, or whether it was true that she was going to be sent to the Metropolitan Center for Accusations and Investigations ("CMID").

4.15  No reason was offered for this apparent insistence in removing Ms. Calderón from her position, which is a highly visible one in the Office.

4.16 Ms. Calderón has very dark skin and is unmistakably recognized as a Black Puerto Rican or Afro-Puerto Rican.

4.17 At the time of the arrival of the new District Prosecutor to the Office, Ms. Calderón was the only visibly black person who was to have worked directly on a regular basis with the new District Prosecutor

4.18 There were three other employees who were visibly Afro-Puerto Rican (i.e. less than 10% of the personnel of the office), but none of them worked as directly with the District Prosecutor on a regular basis as did Ms. Calderón in her position.

4.19 Unlike Ms. Calderón, moreover, none of these other Afro-Puerto Rican employees were the first face one would see when entering the office of the District Prosecutor.

4.20 From the moment Mr. Carrión began as District Prosecutor, Ms. Calderón noticed that her very presence was for all intents and purposes disagreeable for him and that her presence provoked in the new District Prosecutor annoyance, discomfort and anger.

4.21 She felt that Mr. Carrión was intent on "making her invisible," even to the point of suggesting that she be placed in a cubicle which would not be seen by the public.

4.22 During her very first meeting with Mr. Carrión shortly after his assuming his far-reaching duties as District Prosecutor, Mr. Carrión told her that she could be transferred to whatever job she wanted (as long as it was not working directly with the

District Prosecutor).

4.23 Ms. Calderón could not understand why she was being subjected to an involuntary transfer by the new District Prosecutor.

4.24 Never before had she been asked or required to leave a position.

4.25 Having spent decades working with a number of different District Prosecutors, all of whom appeared to be very satisfied with her work, and none of whom had even hinted that it would be better if she worked elsewhere, Ms. Calderón knew that there was no legitimate business reason for this insistence on removing her from her (very public) work assisting the District Prosecutor.

4.26 She felt intimidated, nervous, and under intense stress and pressure, because it was obvious that Mr. Carrión did not want her to be his secretary and had every intention of substituting her for reasons unrelated to any legitimate necessity of the service.

4.27 She felt that she was being forced to a work in an environment that a reasonable person would consider intimidating, hostile, or abusive.

4.28 Ms. Calderón also noticed hostility on the part of Mr. Carrión when he had to have any contact with the few other darker-skinned employees of the Office.

4.29 The first weeks of Mr. Carrión's tenure on the job were harbingers of the tough times in store for Ms. Calderón, due to the discriminatory attitudes of the new District Prosecutor.

4.30 On April 17, 2019, just two days after he assumed the duties of the

position, District Prosecutor Carrión questioned Ms. Calderón for supposedly not preparing the attendance sheets and the evidence of employee's receipt of minutes of prosecutor and other employee meetings, which was not true, since the requested material had been left on his desk the previous afternoon.

4.31 On April 29, 2019, Ms. Calderón was informed by a co-worker that at the Secretary's Day activity, the plaintiff had been the subject of mockery and jokes on the part of co-workers who were under the supervision of the District Prosecutor.

4.32 On that same day, a co-worker told Ms. Calderón that during the activity, the following comment was made about her: "Well, the District Prosecutor gave her the option of leaving [her position]. If she did not want to leave, it's time for her now to withstand the pressure." ("pues ... el fiscal le dio la opción de que se fuera, si no quiso irse ahora que aguante presión.")

4.33 On the following day, April 30, 2019, Ms. Calderón requested permission to leave work, because she was in a nervous crisis and could not stop crying. In response, Mr. Carrión questioned Ms. Calderón intensely.

4.34 Plaintiff ended up having to go that day to the Emergency Room and consulting a psychiatrist, who diagnosed her as being depressed and prescribed several medications for depression, insomnia and anxiety, and ordering her bed-rest for the remainder of the week.

4.35 On May 31, 2019, Mr. Carrión called Ms. Calderón to his office and, in the presence of a co-worker, scolded the plaintiff for not having answered a particular

email while he (Mr. Carrión) had been out on vacation earlier that month.  The plaintiff responded by reminding him of his instructions to her not to answer any emails during his absence.  Nonetheless, the District Prosecutor, raising his voice, in front of another employees, told Ms. Calderón that she was failing in her duties.

4.36 Three days later, on June 3, 2019, Mr. Carrión questioned Ms. Calderón with regard to the entry card for the parking area for the District Prosecutor.  While Ms. Calderón tried to explain to him that she had already informed him of the need to re-program the card, Mr. Carrión stated, "look, many times you talk to me and I don't hear you." ("es que fíjate muchas veces tú me hablas y yo no te escucho.")

4.37 It was two days later that Mr. Carrión proposed placing Ms. Calderón in a cubicle separated from visibility from his office, because according to him, that way, it would be seen as "more elegant" or "more classy" than it now seems ("más cachendoso").  Had that taken place, Ms. Calderón would be completely closed off and isolated into the cubicle area.

4.38 As time went on, even though Ms. Calderón attempted to work in her customary professional manner, she was subjected to increasing intimidating and abusive situations on the part of Mr. Carrión, provoking a hostile environment for her.

4.39 The actions taken by Mr. Carrión included but are not limited to the following: eliminating her customary functions; altering the filing system under her charge; being thoroughly dismissive of her; "seeing through her," failing to communicate with her, even when necessary for her to perform her job; assigning

functions to other employees of a lower job classification; acting as if she were not doing her job; falsely accusing her of misplacing documents; failing to give her the information she needed in order to perform her job functions, and humiliating her in front of co-workers.

4.40 Ms. Calderón was removed from tasks which were essential to her job. This included but was not limited to dealing with correspondence; answering emails; attending to the public; maintaining the calendar; and work which would entail her imparting instructions to other employees.

4.41 Mr. Carrión would barely speak to Ms. Calderón, and when he did, it was often in a cross manner. This made it impossible for her to perform her job.  On information and belief, Mr. Carrión knew that this kind of conduct directed towards the plaintiff would result in her being unable to perform her functions.

4.42 Typically, in response to Ms. Calderón, Mr. Carrión would take a deep breath and make negative gestures, demonstrating that he was bothered by her presence and communicating his displeasure with her in front of all who were present.

4.43 Mr. Carrión changed the system of filing in the Office, under Ms. Calderón's control, despite the fact that the files were well-organized and appropriate to the task.

4.44 Among other humiliations plaintiffs suffered at the hands of the District Prosecutor were his refusing to give her information crucial to her job.  Examples would include his withholding information regarding whether or not he would be in

the office, and telling others not to deliver documents to Ms. Calderón.

4.45 Instead of allowing people to leave documents on Ms. Calderón's desk, as was previously done, the District Prosecutor would shout at visitors from his desk, ignoring Ms. Calderón, and would tell them to go directly to his office.

4.46 Other employees were instructed to bypass Ms. Calderón, as Mr. Carrión did not allow her to present visitors to him and his office.

4.47 When her co-workers would request information about routine matters, such as they had done for years, she would have to tell them that she was not authorized to give follow-up to their requests.

4.48 All of the above created a hostile labor environment, causing Ms. Calderón to feel as if she had to tread very softly and not make her needs known and to be fearful of what might occur each day she arrived at the Office.

4.49 She felt extremely nervous, frightened, anxious, harassed, constantly waiting for the next humiliating incident to occur.

4.50 The ongoing humiliations and hostile environment came to a head during an incident occurring on June 19, 2019:

> a)  When Ms. Calderón arrived at the Office at 8:30AM, she was made aware that Mr. Carrión had moved her work station to position her desk in such a small space that she could not move her chair.

> b)  She requested another employee to assist her in moving the

work station so that she could actually continue to work.

      c) At that moment, the District Prosecutor came out of his office, and raising his voice in an intimidating and aggressive manner yelled at her, screaming at her in front of other employees and saying: "You have an attitude problem.  You do not cooperate.  Yesterday, I asked you where you wanted your desk, and you stated 'wherever you want.'  Now, you want to change it."

      d) Ms. Calderón told the District Prosecutor that his actions were an affront to her dignity and that his shouting was a "lack of respect" ("falta de respeto").

      e). She asked him: "What have I done that since Day 1, you treat me in this way…"

      f). Crying uncontrollably, Ms. Calderón was exceedingly nervous and fearful, experiencing chest pains, and eventually suffering a state of nerves so severe that medical attention was required,

4.51 The treatment which Ms. Calderón received on the part of the District Prosecutor, during this incident and before, caused her to have a major breakdown, in the throes of a psychiatric crisis.

4.52 As a result of the June 19th incident and the actions and attitudes displayed by Mr. Carrión, Ms. Calderón had to report to the State Insurance Fund for the first

time in some thirty (30) years of service as an exemplary employee, remaining absent from her work for a total of 58 working days, while receiving medical treatment.

4.53 After the June 19th incident, Mr. Carrión arranged to have another employee, who is light-skinned, sit at Ms. Calderón's desk and perform her duties during plaintiff's absence from the job.

4.54 This was despite the fact that this substitute employee has no particular knowledge of the job performed for so many years by Ms. Calderón.

4.55 In the past, when Ms. Calderón was absent from the job, she would be substituted by Ms. María Vélez, who is familiar with the work. Ms. Vélez, like Ms. Calderón, is Afro-Caribbean.

4.56 The attitude of the District Prosecutor towards Ms. María Vélez was similar to that he displayed towards the plaintiff - communicating his displeasure with her for no apparent reason except for her race.

4.57 The light-skinned substitute employee mentioned above at paragraphs 4.53 to 4.53, who was inexperienced for Ms. Calderón's position, was treated in a manner entirely different from the manner in which Mr. Carrión treated Ms. Calderón. She was not subject to the kind of humiliations mentioned herein. Nor was she subject to attempts to take her out of public view.

4.58 On July 12, 2019, Ms. Calderón submitted a Complaint to the Office of the Attorney General of Puerto Rico ("Justice Secretary") concerning the above-referenced behaviors creating a hostile environment for the plaintiff, for reasons

which had nothing to do with efficiency or quality of the service.

4.59 Over a year later, in early August, 2020, the Human Resources section of the Department of Justice notified Ms. Calderón that it was dismissing her claim.

4.60 Ms. Calderón's claim was dismissed without any investigator interviewing the witnesses plaintiff had mentioned in her filing.

4.61 This lack of follow-up on the part of the DOJ-PR with respect to Ms. Calderón contrasts with the Justice Department's handling of a complaint which, on information and belief, Mr. Carrión filed against Ms. Calderón, to defend himself against any complaints she would have against him for his conduct and also to document her supposed deficiencies at the workplace.

4.62 Also on information and belief, it is alleged that the DOJ-PR conducted interviews of witnesses with respect to Mr. Carrión's complaint.

4.63 On information and belief, Mr. Carrión has been the subject of several complaints by employees, all of which have been dismissed by the Commonwealth of Puerto Rico Department of Justice.

4.64 On August 5, 2019, the plaintiff filed a Complaint with the federal Equal Employment Opportunity Commission, No. 515-2019-00471, alleging that she had been the victim of racial discrimination and a hostile environment as described herein.

4.65 Mr. Carrión continued in his position as District Prosecutor for the San Juan Judicial District for over two months after the June 19, 2019 incident, while Ms.

Calderón remained out of the office, as she was still reporting to the State Insurance Fund.

4.66 Ms. Calderón returned to work in early September of 2019, hoping to find an improved situation in light of Mr. Carrión's recent transfer to the Prosecutor's Office Carolina as Interim District Prosecutor.

4.67 The work environment, however, continued to be tense and hostile, due to the fact that Mr. Carrión's trust employees remained at the Office and engaged in the same kind of hostile and isolating behavior with respect to her role in the office.

4.68 The indignities continued.  For example, for years, Ms. Calderón had the right to park her vehicle in the parking area usually reserved for prosecutors.  This privilege was taken away from her at that time, and she was relegated to a posterior parking lot, which presents a safety hazard, as it is full of holes, rocks and mud.

4.69 On September 16, 2019, Ms. Calderón sent a notification to then Attorney General, Dennise N. Longo Quiñones, pursuant to the provisions of Law 104-1955, as amended, notifying the Commonwealth of her intention to sue the Commonwealth and District Prosecutor Carrión with respect to the facts set forth herein.

4.70 On January 7, 2021, the United States Department of Justice notified Ms. Calderón of her right to initiate a civil action under Title VII of the 1964 Civil Rights Act against the Department of Justice of the Commonwealth of Puerto Rico ("the Commonwealth"), within ninety (90) days of receipt of the aforementioned notification, i.e. on or before April 5, 2021.

4.71 Throughout the course of events set forth above, the Commonwealth of Puerto Rico failed to address the egregious conduct engaged in by District Prosecutor Carrión, causing plaintiff further injury.

4.72  The harassment plaintiff suffered was pervasive and consistent.  It was enough to make it impossible for her to be able to perform the functions of her job.

4.73 The hostile environment was severe or pervasive enough to make it one that a reasonable person would consider intimidating, hostile, or abusive.

4.74 As a result of the actions of this high-level Prosecutor, Jorge Carrión, as well as the inaction of the Commonwealth in addressing plaintiff's Complaints (and those presented by other co-workers), all of which amount to a toleration and/or fomenting of the offending conduct, the plaintiff has suffered and continues to suffer substantial damages, as manifested by stress, anxiety, depression, bodily aches, desperation, nervousness, insomnia and similar maladies, entitling plaintiff to damages to the full extent permitted by law.

4.75 Ms. Calderón's emotional state and the bodily manifestations thereof, all of which were caused by the underlying race discrimination and hostile environment, as well as by the abject failure of the Commonwealth to address these claims, resulted in plaintiff having to undergo a partial hospitalization in September/October of 2020, during which time she received intense therapy and pharmacological treatment.

4.76 Her self-esteem, developed over decades of hard work and self-realization, has been severely damaged not only by the underlying conduct and the lack of

response of the Commonwealth, but also by the nature of the discrimination, which goes to the heart of plaintiff's identity and feeling of self-worth.

4.77 By September of 2020, as the ongoing affects of the situations described above continued unabated, Ms. Calderón was referred for a partial hospitalization which lasted five (5) days, and her medications were increased.

4.78 It was so difficult for her to go to the office of the prosecutor's office in the San Juan Judicial Region each day, with virtually no tasks to complete, having suffered an unceremonial *de facto* demotion, for no performance-related reason, that she even thought of resigning the position to which she had been promoted, and the office where she had proudly worked for over thirty (30) years.

4.79  In January of 2021, in light of the discrimination and hostility she faced at the Office of the Prosecutor in San Juan, she was able to achieve a "destaque" (detail) to the Office of the Chief Prosecutor, as one of two secretaries to work under the direct supervision of a prosecutor for whom Ms. Calderón had worked successfully in the past.  During the destaque, Ms. Calderón retained her position as Administrator of Legal Systems.

4.80 In March of this year, Mr. Carrión showed up at the Office where Ms. Calderón currently works, causing her extreme distress, since Ms. Calderón, by virtue of the duties attendant to her current position, knew that he had no legitimate reason to be there.

4.81 The actions of the Commonwealth of Puerto Rico (Department of Justice)

and its high-level officials constitute intentional race discrimination.

## CAUSES OF ACTION

### First Cause of Action - Race Discrimination and Hostile Environment

5.1 All previous allegations are realleged herein.

5.2  Title VII makes it unlawful to discriminate against someone on the basis of race and color. The Act also makes it unlawful to retaliate against a person because the person complained about discrimination or opposed any discriminatory practices.

5.3 Title VII prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race or color, as well as hostile environments created on the basis of race or color.

5.4 Title VII has been violated by the Commonwealth, as described herein making it subject to an award of actual compensatory damages, as caused by these actions and omissions, as well as costs, interests and litigation expenses.

### Second Cause of Action - for Attorneys Fees

6.1 Pursuant to Law 402 of May 12, 1950, *32 LPRA Sec. 3114 et seq,* and the applicable case law in Puerto Rico, including but not limited to the March, 2020 case of *Berkan-Méndez v. Mead Johnson, 2020 JTS 29,* plaintiff's attorneys are prohibited from charging their clients with respect to these claims, and can be subject to double dames, as well as an ethics complaint should they do so.

6.2 Under applicable law, in the event of a successful claim, all such fees must be paid by the employer.

6.3 The attorneys who represent such claimants are entitled to payment of fees of no less than 25%, independent of and in addition to the amounts to be recovered by the plaintiffs, an amount which can be increased pursuant to the lodestar method.

6.4 Pursuant to federal fee-shifting law, reasonable attorneys' fees are to be provided to plaintiffs should they prevail on this claims.

**WHEREFORE,** Plaintiff Ivelisse Calderón Alibrán respectfully requests that this court order the defendant:

1. To pay compensatory damages of no less than $500,000.00;

2. To pay reasonable attorneys fees, costs, litigation expenses and applicable interests.

A JURY TRIAL is hereby demanded.

Respectfully submitted in San Juan, Puerto Rico this 18th day of July, 2021.

**Berkan/Mendez**
O'Neill St. G-11
San Juan, P.R. 00918-2301
Tel. (787) 764-0814;Fax (787) 250-0986
berkanmendez@gmail.com

By:

S/ Judith Berkan
  Judith Berkan
  Temp phone 787 399-7657
  USDC No.200803
  berkanj@microjuris.com

S/ Mary Jo Méndez Vilella
Mary Jo Méndez Vilella
Temp phone 787 309-3059
USDC No. 209407
mendezmaryjo@microjuris.com