THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IVELISSE CALDERÓN-ALIBRÁN,<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO,<br><br>Defendant. | Civil No. 21-1149 (ADC) |

**OPINION AND ORDER**

Before the Court is defendant the Commonwealth of Puerto Rico's ("Defendant") motion to dismiss. **ECF No. 13**. Plaintiff Ivelisse Calderón-Alibrán ("Plaintiff") opposed. **ECF No. 17**. A reply ensued. **ECF No. 20**. For the reasons below, the Court **DENIES** Defendant's motion to dismiss.

I. **Background**

Plaintiff filed an amended complaint against Defendant on July 18, 2021. **ECF No. 11**. Therein, Plaintiff raised claims of racial discrimination and hostile work environment pursuant to Title VII of the Civil Rights Act ("Title VII"). **ECF No. 11**. *See also* 42 U.S.C. §§ 2000e *et seq.*

Now, Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

II. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is

entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, the Court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Cooper v. Charter Commc'n Entertainments I, LLC*, 760 F.3d 103, 106 (1st Cir. 2014) (*citing Maloy v. Ballori-Lage*, 744 F.3d 250, 252 (1st Cir. 2014)) (internal quotations marks omitted).

"To cross the plausibility threshold, the plaintiff must 'plead factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cooper*, 760 F.3d at 106 (*citing Maloy* 744 F.3d at 252). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

At the motion to dismiss stage, the Court may ordinarily only consider facts alleged in the complaint and its attached exhibits. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Otherwise, the Court must convert the motion into one for summary judgment. *See id.* (*citing* Fed. R. Civ. P. 12(d)). However, under certain narrow exceptions, some extrinsic documents may be considered without converting the motion. *See Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013). These exceptions are: (1) documents the authenticity of which are not disputed

by the parties, (2) official public records, (3) documents central to plaintiff's claim, and (4) documents sufficiently referred to in the complaint. *See id.* (*quoting Watterson*, 987 F.2d at 3). "When a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings, thereby giving the Court the discretion to consider such additional material." *Newman v. Lehman Brothers Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (*citing Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008)).

### III. Relevant Factual Allegations in the Complaint[1]

Plaintiff is a black Puerto Rican female who began working for the Puerto Rico Department of Justice ("PR DOJ") in September 1989 and was eventually promoted to the position of "Administrator of the Legal Office System." She was the main secretary of the Chief Prosecutor for the San Juan judicial district. Prior to Jorge Carrión-Ramos's ("Carrión-Ramos") appointment as Interim Chief on April 15, 2019, she had already worked for nine different Chief Prosecutors. As Interim Chief, Carrión-Ramos was the highest-ranking prosecutor in the San Juan judicial district.

Before Carrión-Ramos began working as Interim Chief Prosecutor, Plaintiff learned that he did not want her to continue as the Chief Prosecutor's secretary from co-workers who asked her whether she was going to be transferred to another office. In their first meeting, Carrión-

---

[1] The following are Plaintiff's allegations in his amended complaint. **ECF No. 11**. For purposes of this motion to dismiss, the Court accepts as true all the factual allegations in the amended complaint and construes all reasonable inferences in favor of Plaintiff. *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

Ramos told her that she could be transferred to whatever job she wanted so long as she was not working directly with him. As a career employee with over 30 years of experience, she was not provided a reason as to why she was being urged to transfer.

On April 17, 2019, two days after starting as Interim Chief Prosecutor, Carrión-Ramos questioned Plaintiff as to why she did not prepare attendance sheets and meeting minutes. Plaintiff maintains she had left the same on his desk the previous afternoon.

On April 29, 2019, a co-worker informed Plaintiff that she was being mocked by other co-workers during the activities for Administrative Professionals' Day. Specifically, this comment was made about her: "well, the [Chief] Prosecutor gave her the option of leaving [her position]. If she did not want to leave, it's time for her now to withstand the pressure." The next day, Plaintiff requested permission to leave work because she was having a nervous breakdown, but Carrión-Ramos responded by questioning her intensely. Subsequently, Plaintiff had to go to the emergency room and to consult a psychiatrist, who diagnosed her with depression, insomnia, and anxiety.

On May 31, 2019, Carrión-Ramos called Plaintiff into his office and, in the presence of a co-worker, scolded her for not having answered to a particular email while he was out on vacation earlier that month. She responded by reminding him of his instructions to her to not answer any emails during his absence. Carrión-Ramos replied by raising his voice and claiming that she was failing in her duties.

On June 3, 2019, Carrión-Ramos interrogated her regarding his access card to the parking area. While she tried to explain to him that she already had informed him about the need to reprogram the access card, Carrión-Ramos stated "look, many times you talk to me and I don't hear you."

On June 5, 2019, Carrión-Ramos proposed that Plaintiff's workstation be relocated to an isolated cubicle that wasn't in the Chief Prosecutor's office because it would be seen as "more elegant" or "more classy" than the current setup. As the main secretary for the Chief Prosecutor of the San Juan judicial district, Plaintiff was the first person you would see when entering Carrión-Ramos's office. Out of the four black employees in the San Juan judicial district, she was the only one to directly work with the Chief Prosecutor on a regular basis. Plaintiff felt as if he was trying to make her invisible.

As time went on, Carrión-Ramos inhibited Plaintiff from performing her essential tasks by eliminating and altering her customary functions such as handling the correspondence, managing the filing system, answering emails, attending to visitors, coordinating appointments, scheduling commitments, keeping attendance records, taking minutes, drafting communications, and supervising other co-workers. Furthermore, he would avoid talking to Plaintiff and when he did, he would take a deep breath and make negative gestures that publicly demonstrated his displeasure with her. Instead of permitting people to leave documents with Plaintiff as was previously done, Carrión-Ramos would shout at visitors from his desk and tell them to ignore her and to go directly into his office. Carrión-Ramos would not allow her to

escort some visitors to his office. When co-workers requested information from her regarding routine matters, Plaintiff would have to tell them that Carrión-Ramos did not authorize her to answer follow-up requests.

Plaintiff's recalls that her presence seemed to provoke Carrión-Ramos's anger, annoyance, and discomfort. She felt intimidated, nervous, and under intense stress and pressure. Regardless, she continued working in her customary professional manner. She also felt that she was being forced to work in an abusive work environment where she was fearful of the next humiliating incident.

Everything came to a head on June 19, 2019. When Plaintiff arrived at the office at 8:30 a.m., she found out that Carrión-Ramos had moved her workstation to such a small space that she could not move her chair. When she asked for a co-worker's assistance, Carrión-Ramos came out of his office and screamed at her in front of other co-workers, "you have an attitude problem. You do not cooperate. Yesterday, I asked you where you wanted your desk, and you stated, 'wherever you want.' Now, you want to change it." Plaintiff responded that his actions demonstrated a "lack of respect" and asked him, "what have I done that since Day 1, you treat me this way . . ." As a result, Plaintiff suffered a nervous breakdown and experienced chest pains that were so severe that she required medical attention and time off from work.

During her absence, Carrión-Ramos replaced Plaintiff with a "light skinned" employee who had no experience as an administrator. When Plaintiff was absent in the past, the norm was that she would be substituted by María Vélez ("Vélez"), who is also a black Puerto Rican female

who was familiar with Plaintiff's work. However, Plaintiff heard that Carrión-Ramos did not want Vélez working in his office. Plaintiff noticed that Carrión-Ramos would treat Vélez the same way he treated her and the other black employees. Unlike Plaintiff and Vélez, the "light-skinned" substitute administrator was not subject to humiliation nor attempts to take her out of the public view.

On July 12, 2019, Plaintiff submitted a complaint to the office of the Attorney General of the PR DOJ. In early August 2020, the PR DOJ's human resources department informed Plaintiff that it was dismissing her claim even though none of her witnesses were interviewed. Other co-workers who had filed complaints against Carrión-Ramos had their complaints dismissed as well. Meanwhile, Carrión-Ramos filed a complaint against Plaintiff, which was handled differently in that his witnesses were actually interviewed.

On August 5, 2019, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission and obtained the right-to-sue letter on January 7, 2021.

## IV.  Discussion

Pursuant to Rule 12(b)(6), Defendant moves to dismiss Plaintiff's claim of hostile work environment under Title VII asserting she failed to exhaust administrative remedies. **ECF No. 13 at 4-7.** In addition, Defendant contends that Plaintiff fails to state Title VII claims of disparate treatment and hostile work environment upon which relief may be granted. **ECF No. 13 at 7-12**.

a. **Exhaustion of Administrative Remedies: Hostile Work Environment**

Defendant argues that Plaintiff cannot assert a hostile work environment claim under Title VII because she failed to exhaust the administrative remedies. **ECF No. 13 at 4-7.** Although it concedes that Plaintiff filed an EEOC charge, **ECF No. 18-1**, Defendant posits that there are no allegations or references in the charge filed asserting a hostile work environment claim. **ECF No. 13 at 6.** Thus, in Defendant's view, such a claim cannot be levied now. **ECF No. 13 at 6-7**. As Plaintiff points out in her response, Defendant is wrong. **ECF No. 17 at 10-14**.

Title VII mandates that plaintiffs exhaust administrative remedies. *See Rivera-Díaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 389 (1st Cir. 2014). Failure to do so bars the courthouse door. *See Velázquez-Ortiz v. Vilsack*, 657 F.3d 64, 71 (1st Cir. 2011). Still, the mere filing of an EEOC charge does not usher any and every Title VII claim into federal court. *See id*.

The claims filed in federal court must "bear some close relation" to the allegations raised in the EEOC charge. *See id.* (*citing Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005)). But "the scope of a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the [EEOC] investigation could reasonably be expected to uncover." *Davis v. Lucent Tech., Inc.*, 251 F.3d 227, 233 (1st Cir. 2001). This so-called "scope of the investigation rule" allows an employee to include in the complaint claims related to acts of discrimination that the EEOC investigation could have been reasonably expected to uncover, regardless of whether they were investigated. *See González-Nieves v. Nieves-*

*Miranda*, 264 F. Supp. 3d 357, 362 (D.P.R. 2017) (*citing Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31-32 (1st Cir. 2009)).

Per the rule, the scope of a civil action is not determined by the specific language of the charge – it may encompass acts of discrimination that the EEOC investigation could be reasonably expected to uncover. *See Thornton*, 587 F.3d at 31-32. Thus, the Court can "look beyond the four corners of the underlying administrative charge" to determine whether the employee exhausted the required administrative remedies. *Id.* at 33. However, the Court must not allow a plaintiff "to extend his claim endlessly beyond the bounds and parameters encompassed by the administrative charge." *Id.* at 32.

Against this backdrop, Plaintiff's hostile work environment claim survives Defendant's challenge here. Plaintiff's EEOC charge includes factual allegations that form a substantial part of her hostile work environment claim. **ECF No. 18-1**. The factual bases that are pleaded in the EEOC charge are part and parcel of an alleged pattern of behavior against Plaintiff. These factual bases are thus closely related to the conduct specified in the EEOC charge – so much so, that they would fall squarely within the scope of any investigation the EEOC conducted into Plaintiff's charges. *See González-Nieves*, 264 F. Supp. 3d at 362; *Davis*, 251 F.3d at 233.

To boot, that the words "hostile work environment" are not included in the EEOC charge is irrelevant. Again, "the scope of a civil action is not determined *by the specific language* of the charge filed." *Davis*, 251 F.3d at 233 (emphasis supplied). Plaintiff's administrative charge contains more than enough factual allegations to formulate a hostile work environment claim –

regardless of whether those specific words are spelled out in the charge. *See Thornton*, 587 F.3d at 31-32.

For these reasons, the Court **DENIES** Defendant's motion to dismiss Plaintiff's hostile work environment claim for failure to exhaust administrative remedies.

### b. **Failure to State a Claim: Disparate Treatment**

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. It forbids both intentional discrimination (known as disparate treatment) and practices that are not intended to discriminate but have had a disproportionately adverse effect on minorities (known as disparate impact). *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Disparate-treatment cases are "the most easily understood type of discrimination" and occur where an employer has "treated a particular person less favorably than others because of" membership in a protected class. *Id.*

In discrimination cases, plaintiffs do not need "to plead facts sufficient to establish a prima facie case at the pleading stage." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013). The elements of the prima facie case "are part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim." *Id.* The plausibility standard governs on a motion to dismiss, so "[n]o single allegation need [establish] . . . some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible."

*Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014) (*citing Ocasio-Hernández*, 640 F.3d at 14-15).

In a disparate treatment case, plaintiffs may sufficiently plead a prima facie case by showing that: (1) they are members of a protected group; (2) they were meeting their employer's legitimate expectations, (3) they were subjected to an adverse employment action, and that (4) they were treated less favorably than a similarly situated employee outside of the protected class. *See Aguayo v. Napolitano*, 810 F. Supp. 2d 406, 416 (D.P.R. 2011) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, n. 13 (1973)). Plaintiffs need only demonstrate "a small showing that is not onerous and is easily made." *Pizarro-Correa v. P.R. Internal Revenue Dep't*, 267 F. Supp. 3d 369, 377 (D.P.R. 2017) (*citing Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003)).

In the present case, Defendant argues that the pleadings do not indicate that Plaintiff is a member of a protected class. **ECF No. 13 at 8**. The Court disagrees. Plaintiff very clearly states that she is a black Puerto Rican female. **ECF No. 11 at 7**. In the EEO charge, Plaintiff further asserts "I feel discriminated because I am the only black person working directly with Mr. Jorge Carrión so he has resorted to other white people to do a big part of my job." **ECF No. 18-1 at 2**. Thus, the Court finds that Plaintiff sufficiently pled that she is a member of a protected class. *See Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 222 (1st Cir. 2007) ("In this case, appellant is a black Puerto Rican male and thus is a member of a protected class").

Next, Defendant contends that Plaintiff fails to plead that she endured an adverse employment action. **ECF No. 13 at 8**.

The test to determine if an employment action is adverse is whether the action "materially changes the conditions of plaintiff's employ." *Burns v. Johnson*, 829 F.3d 1, 10 (1st Cir. 2016). The change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* The Court engages in an objective case-by-case inquiry, recognizing that "workplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Garmon v. Nat. R.R. Passenger Corp.*, 844 F.3d 307, 314 (1st Cir. 2016). Material changes include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Gu v. Bos. Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002).

Plaintiff alleges that Carrión-Ramos eliminated the customary functions of her job and reassigned them to other lower-ranking employees. **ECF No. 11 at 10-11**. For example, Carrión-Ramos changed the filing system so that Plaintiff was no longer involved as well as prohibited Plaintiff from dealing with the correspondence, answering emails, attending to the public, maintaining the calendar, providing follow-ups or instructing other coworkers, and refusing to provide her with information that was essential to the performance of her job. **ECF No. 11 at 10-12.** She explains that she had virtually no tasks to complete. **ECF No. 11 at 18**. Consequently, the Court finds that Plaintiff has sufficiently pled that she was subject to an adverse employment action. *See Burns*, 829 F.3d at 10 (holding that seventy-five percent reduction of important duties is material change to the condition of plaintiff's employ); *Gu*, 312 F.3d at 14 (holding that loss of

supervisory authority, exclusion from office meetings, and diminished communications regarding office matters constitute adverse employment action).

Defendant further argues Plaintiff fails to plead that she was treated less favorably than a similarly situated employee outside of her protected class. **ECF No. 13 at 8-9**. The Court finds otherwises. Plaintiff's pleadings allege that she was treated worse than the white co-worker who replaced her because the substitute administrator was not subject to humiliation and removal from the public view. **ECF No. 11 at 14**. As such, Plaintiff has sufficiently pled that she was treated less favorably than a similarly situated employee outside of her protected class.

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss Plaintiff's disparate treatment claim.

c. **Failure to State a Claim: Hostile Work Environment**

Defendant argues that Plaintiff fails to state a hostile work environment claim upon which relief may be granted. **ECF No. 13 at 9-12.** It asserts that Plaintiff's allegations are not sufficiently severe or pervasive enough to alter the conditions of employment and create an abusive working environment. **ECF No. 13 at 11-12**.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Cerezo-Martín v. Agroman*, 213 F. Supp. 3d 318, 326 (D.P.R. 2016) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prevail on a hostile work environment claim, Plaintiff must show: (1) that he is a member of a protected

class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his membership of the protected class; (4) that the harassment was so severe or pervasive that it altered the conditions of his employment and created an abusive work environment; (5) that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *See id.* (*citing Torres-Negrón v. Merck & Co., Inc.*, 488 F.3d 34, 39 (1st Cir. 2007)).

The severe or pervasive inquiry is "highly fact specific." *Cerezo-Martín*, 213 F. Supp. 3d at 327 (*citing Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 474 (1st Cir. 2002)). No "mathematical precise test" exists for determining when conduct in the workplace moves beyond the "merely offensive" and enters the realm of unlawful discrimination. *Id.* (*citing Harris*, 510 U.S. at 21-22). The Court must consider the totality of the circumstances in making its assessment. *See id.* (*citing Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006)). The factors considered are: "the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id.* (*quoting Harris*, 510 U.S. at 23). Using these factors as a rough guide, the Court's role is "to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Id.* (*citing Noviello v. City of Bos.*, 398 F.3d 76, 92 (1st Cir. 2005)).

In the case at hand, the record contains sufficient facts to plausibly plead that Plaintiff was the victim of unwelcome harassment based on her race. Specifically, Plaintiff alleges that she endured severe and pervasive discriminatory intimidation, ridicule, and insult on April 17, April 29, April 30, May 31, June 3, June 5, and June 19, 2019. **ECF No. 11 at 8-10, 12-13**. Given the low bar the Plaintiff must meet in order to survive a motion to dismiss, the Court finds that Plaintiff has stated sufficient facts to state an actionable claim of hostile work environment. *See Flipp v. Town of Rockland*, 613 F. Supp. 2d 141, 146 (D. Mass. 2009) (noting the low bar plaintiffs must meet in order to survive a motion to dismiss hostile work environment claim).

Based on this explanation, the Court **DENIES** Defendant's motion to dismiss Plaintiff's hostile work environment claim.

**V. Conclusion**

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss. **ECF No. 13**. Furthermore, the Court **FINDS AS MOOT** Defendant's original motion to dismiss. **ECF No. 9.**

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of March, 2022.

                 S/AIDA M. DELGADO-COLÓN
                 **United States District Judge**